# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MULUWORK SHUME,

    *Plaintiff*,

v.

PEARSON EDUCATION INC. *et al.*,

    *Defendants*.

Civil Action No. 16-800 (TJK)

## MEMORANDUM OPINION AND ORDER

Plaintiff Muluwork Shume applied for, and was granted, a Nurse Aide Certificate by the District of Columbia Department of Health in 2007. The District of Columbia then renewed Shume's certificate three times. However, in 2015, Defendants Pearson Education Inc. and NCS Pearson, Inc. (together, "Pearson")—which contract to provide testing services for the District of Columbia—informed Shume that her renewal application would be denied, explaining that she did not meet the qualifications for a Nurse Aide Certificate and had to take an examination to renew hers. On November 30, 2015, Shume's certificate expired. On December 1, 2015, Shume filed this lawsuit.

Defendants Pearson and the District of Columbia have each moved to dismiss Shume's Amended Complaint. *See* ECF No. 12 ("Pearson Br."); ECF No. 13 ("D.C. Br."); *see also* ECF No. 15 ("Pl.'s Opp'n"); ECF No. 17 ("Pearson Reply"); ECF No. 18 ("D.C. Reply"). Each motion will be granted in part and denied in part. Shume brings a claim for breach of contract, which will be dismissed. Shume's claim under 42 U.S.C. § 1983, however, may proceed. Shume also asserts claims for injunctive and declaratory relief and a writ of mandamus. Her requests for injunctive and declaratory relief will be dismissed without prejudice to her seeking

such relief at the appropriate time, and her request for a writ of mandamus will be dismissed as well.

I. **Background**

For purposes of this motion, the Court accepts as true the allegations in Shume's Amended Complaint.[1] Shume worked as a nursing assistant in New York until 2006, when she moved to the District of Columbia. Am. Compl. ¶ 8. In February 2007, she successfully completed a state-approved training program in Maryland, which she alleges also constituted a "nurse aide competency evaluation program which had been approved by the District of Columbia." *Id.* ¶¶ 9-10. In October 2007, the Maryland Board of Nursing issued Shume a Certified Nursing Assistant license, which was still active as of the filing of the Amended Complaint. *Id.* ¶ 11.

Shume then sought and obtained a Nurse Aide Certificate from the District of Columbia Department of Health by "endorsement" (that is, based on her Maryland license). *Id.* ¶¶ 12-13. The certificate, dated November 30, 2007, stated that Shume had "successfully completed the required competency evaluation program and [was] listed on the Nurse Aide Registry in the District of Columbia." *Id.* ¶ 13; Pl.'s Ex. C. Her certificate in hand, Shume began working as a nurse aide in the District of Columbia. Am. Compl. ¶ 14. Shume subsequently renewed her certification three times, in 2009, 2011, and 2013. *Id.* ¶ 15. Like the original certificate, each renewal stated that Shume had fulfilled the "required competency evaluation program." *Id.* ¶ 16; Pl.'s Ex. D.

---

[1] The Amended Complaint is among the documents transferred from Superior Court. *See* ECF No. 2-1 at 18-27, 34-49 ("Am. Compl."); *see also id.* at 47 ("Pl.'s Ex. C"); *id.* at 48-49 ("Pl.'s Ex. D").

When her certification was up for renewal again in 2015, Shume timely completed a renewal form application and sent it to Pearson. Am. Compl. ¶ 18. The application required Shume to pay a $12 fee, provide her contact information and work history, and certify her fulfillment of certain continuing education requirements. *See* ECF No. 14-1; ECF No. 15-3.[2] The renewal form stated: "Once Pearson . . . receives your form and fee, they will renew your certificate and send you a new certificate and wallet card." ECF No. 15-3; *see* ECF No. 14-1; Am. Compl. ¶ 25.

After submitting the application, Shume received a letter from Pearson stating that her certificate could not be renewed. Am. Compl. ¶ 19. Pearson explained that Shume was not qualified because "she had not passed the NNAAP Nurse Aide Practice Exam or been enrolled on the Maryland Geriatric Nursing Assistant (GNA) registry." *Id.* Shume's license expired on November 30, 2015. *Id.* ¶ 20. As a result, Shume's employer placed her on "unpaid administrative leave" on December 1, and terminated her on December 15. *Id.* ¶¶ 21-22.

On December 1, 2015, Shume filed a handwritten *pro se* complaint in the Superior Court for the District of Columbia. *See* ECF No. 2-1 at 86. The complaint named "Promissor, Inc." as the defendant and was apparently intended to be brought against Pearson. *See id.* Shume also filed a form motion for a temporary restraining order, which was denied after a hearing. *See id.* at 77, 84. Pearson moved to dismiss, *see id.* at 65-68, but its motion became moot when Shume, having obtained counsel, filed the Amended Complaint against Defendants Pearson and the District of Columbia, *see id.* at 4 (docket number 12); Am. Compl.

---

[2] While the parties have attached different versions of the renewal form to their submissions, Shume agrees that the form is properly before the Court on these motions to dismiss and that any differences are immaterial. *See* Pl.'s Opp'n at 6 n.2.

The Amended Complaint asserts four causes of action. The first, for breach of contract, alleges that Shume's submission of her renewal application caused a binding contract to form between her and Defendants, which they breached by declining to renew her certificate. Am. Compl. ¶¶ 23-27. Shume's second cause of action seeks a "Preliminary and Permanent Injunction and/or Writ of Mandamus" requiring Defendants to renew her certificate. *Id.* ¶¶ 28-35. Her third cause of action seeks a declaratory judgment that she is entitled to renewal. *Id.* ¶¶ 36-38. The fourth cause of action arises under 42 U.S.C. § 1983 and alleges that Defendants violated her right to due process by revoking her certificate without a pre- or post-deprivation hearing or other adequate safeguards. *Id.* ¶¶ 39-45.

Pearson removed the case to this Court, asserting federal question jurisdiction. ECF No. 1. Defendants then filed the instant motions to dismiss.

## II. Legal Standard

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.'" *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). "In evaluating a Rule 12(b)(6) motion, the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). "But the Court need not accept inferences drawn by plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Id.* "To survive a motion to dismiss, a complaint must have 'facial plausibility,' meaning it must 'plead[] factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III. Analysis

As explained below, the Court agrees with Defendants that Shume has failed to state a claim for breach of contract, which will be dismissed. But the Court concludes that Shume has stated a claim for a violation of 42 U.S.C. § 1983 based on her right to procedural due process (although the claim will be dismissed insofar as it attempts to state a claim based on substantive due process). Shume also asserts two causes of action seeking equitable and declaratory relief, along with a writ of mandamus. Those claims will be dismissed without prejudice to Shume's ability to request any relief to which she may be entitled at the appropriate time.

### A. Breach of Contract (Count I)

The elements of a breach of contract claim under District of Columbia law are: "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). Defendants contest the first element, whether the parties entered into a valid contract. *See* Pearson Br. at 6-9; D.C. Br. at 5-7. The Court agrees with Defendants that Shume has not plausibly alleged the existence of a binding contract.

Shume argues that the form application she received was an offer to enter into a unilateral contract, which she accepted by completing and submitting the form. *See* Pl.'s Opp'n at 8-12. Specifically, she alleges that the following language constituted an offer: "Once Pearson . . . receives your form and fee, they will renew your certificate and send you a new certificate and wallet card." ECF No. 15-3. She claims to have accepted this offer, forming a contract that Defendants breached by failing to renew her certificate. Pl.'s Opp'n at 13.

5

The Court concludes that this claim fails as a matter of law, because it is implausible that Pearson or the District of Columbia made an offer to contract by stating that Pearson "will renew your certificate." An offer is "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *1836 S St. Tenants Ass'n, Inc. v. Estate of Battle*, 965 A.2d 832, 839 (D.C. 2009) (emphasis omitted) (quoting Restatement (Second) of Contracts § 24 (1981)). An assertion that a party made an offer fails as a matter of law when surrounding circumstances establish that the purported offeror did not manifest an intent to be bound. *See RDP Techs., Inc. v. Cambi AS*, 800 F. Supp. 2d 127, 142 (D.D.C. 2011); *see also Shinabargar v. Bd. of Trs. of Univ. of D.C.*, 164 F. Supp. 3d 1, 29 (D.D.C. 2016) (dismissing breach of contract claim under Rule 12(b)(6) where plaintiff did not plausibly allege intent to be bound); *Stovell v. James*, 810 F. Supp. 2d 237, 250 (D.D.C. 2011) (similar).

The Court finds *Chattler v. United States*, 632 F.3d 1324 (Fed. Cir. 2011), instructive on the issue of whether Defendants extended Shume an offer. In *Chattler*, the plaintiff had submitted an expedited passport application. *See id.* at 1326. The application stated: "Expedited requests will be processed in three workdays from receipt at a passport agency. The additional fee for expedited services is $60." *Id.* (emphasis omitted). The plaintiff claimed that this statement represented an offer, which she accepted by paying the $60 fee. *Id.* at 1327. The Federal Circuit disagreed, for four reasons. First, it noted that the description of "the expedite procedure as a 'request' . . . belies any obligatory intent." *Id.* at 1330. Second, it relied on cases holding that an "obligation of the government, if it is to be held liable, must be stated in the form of an undertaking, not as a mere prediction or statement of opinion or intention." *Id.* (quoting *Cutler-Hammer, Inc. v. United States*, 441 F.2d 1179, 1182 (Ct. Cl. 1971)). In contrast, the

purported promise in *Chattler*—that the requests "*will* be processed in three workdays"—merely restated the content of the relevant regulations and did not use the language of obligation. *Id.* at 1331 (emphasis added). Third, the court determined that acceptance of the offer "would not necessarily conclude the bargain," because the regulations empowered the government to deny the request "under certain conditions." *Id.* Finally, the Federal Circuit found it implausible that a government contract could be formed from two sentences in an application form, "a far cry from the comprehensive instruments that typify [federal] government contracts." *Id.*

For similar reasons, the Court concludes that the language relied on by Shume could not plausibly constitute an offer in this context. A license application is generally understood as a request for government action, not a contract. *See In re U.S. OPM Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 43 (D.D.C. 2017). Consistent with that understanding, the language at issue here—that Pearson "will renew your certificate"—merely described the renewal process. *See Chattler*, 632 F.3d at 1330-31. The application employed the language of prediction ("will"), not of obligation ("shall"). And as in *Chattler*, the fact that the application left certain conditions unsaid—here, the requirement that the applicant must be otherwise qualified for a Nurse Aide Certificate, *see* D.C. Code § 3-1205.10(d)(2)—does not mean that those conditions may be read out of the regulatory scheme. Shume effectively seeks that result: she wants to hold the government liable in contract for failing to renew her certificate, regardless of whether she was in fact entitled to renewal. But it is implausible to think that a government entity or its contractor would so lightly offer to license a health-care worker regardless of her qualifications. *Cf. Francis v. Rehman*, 110 A.3d 615, 621 (D.C. 2015) (noting that a "contract made in violation of a licensing statute that is designed to protect the public will usually be considered void and

unenforceable" (quoting *Sturdza v. United Arab Emirates*, 11 A.3d 251, 257 (D.C. 2011))).
Therefore, Shume's breach of contract claim will be dismissed.

**B.      42 U.S.C. § 1983 (Count IV)**

Shume also alleges that Defendants violated her procedural and substantive due process rights under the Fifth Amendment to the Constitution. She asserts this claim under 42 U.S.C. § 1983, which imposes liability on any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

To state a claim under § 1983, a plaintiff must plead facts sufficient to establish that (1) "a person acting under color of state law" committed (2) a "violation of a right secured by the Constitution and laws of the United States." *West v. Atkins*, 487 U.S. 42, 48 (1988). In addition, to hold a municipality liable under § 1983, a plaintiff must plead facts that demonstrate that the municipality's "policy or custom" caused the constitutional injury. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Blue v. District of Columbia*, 811 F.3d 14, 18-19 (D.C. Cir. 2015). The Court will consider Defendants' arguments directed to each of these elements. *See* Pearson Br. at 12-13; D.C. Br. at 10-13; Pearson Reply at 5-7; D.C. Reply at 1-4.[3]

---

[3] Neither Defendant argues that the Amended Complaint must be dismissed because it fails to meet the third element—that is, that it does not allege that a municipality's "policy or custom" caused Shume's constitutional injury. *Monell*, 436 U.S. at 694. That may be because the alleged constitutional violation—Defendants' denial of Shume's renewal application without due process—is based on their own refusal to perform an official act, and hardly seeks to hold them liable on a *respondeat superior* theory, which *Monell* prohibits. *See id.* at 691-94. In any event, because the issue was not briefed by the parties, the Court assumes for the purposes of this Opinion that the Amended Complaint pleads facts sufficient to meet this element for both Defendants.

### 1. Action under Color of Law

Pearson argues that, as a threshold matter, it cannot be held liable under 42 U.S.C. § 1983 because it did not act "under color of state law" as the statute requires. Pearson Br. at 12. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Williams v. United States*, 396 F.3d 412, 414 (D.C. Cir. 2005) (quoting *West*, 487 U.S. at 49) (internal quotation marks omitted). This requirement, like the "state action" requirement under the Fourteenth Amendment, "may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Id.* (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). "[A] challenged activity may be state action when it results from the State's exercise of coercive power, when the State provides significant encouragement, either overt or covert, or when a private actor operates as a willful participant in joint activity with the State or its agents." *Id.* (alteration in original) (quoting *Brentwood Academy*, 531 U.S. at 296).

Courts have generally been skeptical of claims that testing companies like Pearson are state actors, concluding that they are not state actors when they merely administer tests and report the results. *See Fox v. Int'l Conf. of Funeral Serv. Exam'g Bds.*, 242 F. Supp. 3d 272, 282-83 (S.D.N.Y. 2017) (collecting cases). However, courts have held that testing companies are state actors when the companies are directly involved in the licensing process, for example by having the power to revoke or issue licenses. *See id.* at 284-85. This distinction makes sense because only the latter set of activities are "traditionally the exclusive prerogative of the State." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353 (1974). On the one hand, it is not a traditional government function to make an *assessment* of an individual's qualifications for a professional

license, for example by administering an exam and reporting the results. *Cf. NCAA v. Tarkanian*, 488 U.S. 179, 193-99 (1988) (holding that the NCAA acted as a private party when it recommended that a state university discipline an employee); *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 524-25 (3d Cir. 1994) (holding educational accreditation organization was a private actor even when its decisions were followed by a state board). But on the other hand, the *issuance* of a state license to practice a profession—that is, the act of granting or withholding the license—plainly is a traditional government function even if delegated to a private party. *See Fox*, 242 F. Supp. 3d at 283-85 & n.5; *cf. Tarkanian*, 488 U.S. at 195 ("It is, of course, true that a State may delegate authority to a private party and thereby make that party a state actor."); *NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 42-44 (D.C. Cir. 2015) (concluding a private party acted as the District of Columbia's agent when it denied Medicaid prescription drug claims).

In this case, the Amended Complaint plausibly implicates Pearson in the process of issuing nurse aide certificates. Shume alleges not merely that Pearson contracted with the District of Columbia to provide testing services, but also that Pearson received her renewal application and notified her that it would be denied unless she took the required examination. Am. Compl. ¶¶ 12, 18-19. Moreover, the renewal form could be read to imply that Pearson exercised a portion of the District of Columbia's certification authority: "Once Pearson . . . receives your form and fee, *they will renew your certificate* and send you a new certificate and wallet card." ECF No. 15-3 (emphasis added); *see also* Pearson Br. at 9 ("Plaintiff refuses to take the exam, so *Pearson* cannot issue her a license." (emphasis added)). Indeed, the version of the form proffered by Pearson bears its logo across from the District of Columbia's. *See* ECF No. 14-1. Drawing all inferences in favor of Shume, as the Court must at this stage, she has

plausibly alleged that the District of Columbia delegated to Pearson some of its power to license applicants and to decide what procedures to afford them, and that Pearson exercised that power in declining to renew Shume's certificate. Thus, she has plausibly alleged that Pearson "acted as the District's agent" in denying her renewal application. *NB ex rel. Peacock*, 794 F.3d at 43.

### 2. Violation of a Constitutional Right

#### a. Procedural Due Process

To bring a procedural due process claim, a plaintiff must allege that the defendant deprived her of a cognizable liberty or property interest, and that the defendant did so without appropriate procedural protections. *See, e.g.*, *GE v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010). The Court will analyze Defendants' arguments directed to each of these elements.

##### i. Liberty or Property Interest

Shume alleges that she possessed both a property interest in the renewal of her license and her employment, and a liberty interest in her ability to practice her chosen profession as a nurse aide. *See* Am. Compl. ¶¶ 41-42. The District of Columbia argues that Shume lacked a property interest in the renewal of her certification, because the Board of Nursing had discretion whether or not to grant renewal. *See* D.C. Br. at 11-12. But the Court need not decide that issue, because the District of Columbia does not dispute Shume's allegation that she had a liberty interest in her right to work as a nurse aide. *See id.*; Am. Compl. ¶ 42.

"The Constitution protects an individual's 'right to follow a chosen trade or profession' without governmental interference." *O'Donnell v. Barry*, 148 F.3d 1126, 1141 (D.C. Cir. 1998). (quoting *Kartseva v. Dep't of State*, 37 F.3d 1524, 1529 (D.C. Cir. 1994)); *see also Doe v. Rogers*, 139 F. Supp. 3d 120, 154-57 (D.D.C. 2015) (concluding that the right to practice a profession is a liberty interest protected by the Due Process Clause, though not a "fundamental" right); *Robinson v. Huerta*, 123 F. Supp. 3d 30, 42 (D.D.C. 2015) (noting that the government

11

cannot arbitrarily deny "the right to continue engaging in a lawful profession, once obtained"). Indeed, "the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure." *Stidham v. Tex. Comm'n on Private Sec.*, 418 F.3d 486, 491 (5th Cir. 2005) (alteration in original) (quoting *Truax v. Raich*, 239 U.S. 33, 41 (1915)). "Several professions have been recognized as constituting 'common occupations,'" including lawyers, police officers, and nurses. *Becker v. Ill. Real Estate Admin. & Discip. Bd.*, 884 F.2d 955, 957 (7th Cir. 1989); *see also Greenlee v. Bd. of Med. of D.C.*, 813 F. Supp. 48, 57 (D.D.C. 1993) (finding doctor licensed in New York had liberty interest in right to practice medicine in District of Columbia). Defendants have not disputed that, without the required certificate, Shume is unable to continue to pursue her chosen profession as a nurse aide in the District of Columbia. Therefore, Shume plausibly alleges that she was deprived of a liberty interest.

### ii. Procedures Provided

Shume must next allege that Defendants deprived her of her interest without adequate procedural safeguards. "[I]n assessing the requirements of procedural due process in any case, a court must weigh (1) the importance of the private interest at stake, (2) the risk of an erroneous deprivation of the interest because of the procedures used and the probable value of additional procedural safeguards, and (3) the government's interests, including the cost of additional procedures." *English v. District of Columbia*, 717 F.3d 968, 972 (D.C. Cir. 2013) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). "Beyond the basic requirements of notice and an opportunity to be heard, the precise requirements of procedural due process are flexible." *Id.*

Shume alleges that she received notice that her certificate would not be renewed in the form of a letter from Pearson, but that she received no process to challenge Pearson's conclusion that she was not qualified. *See* Am. Compl. ¶¶ 19-20, 44. And she alleges that she lost her

employment as a result of the non-renewal, so the private interests at stake are obviously quite weighty. *Id.* ¶¶ 21-22.

Defendants focus on the second prong of the test. They argue that Shume was not entitled to any procedures apart from notice of what she had to do to retain her license. *See* D.C. Reply at 3; Pearson Reply at 5-6. There was, they claim, no meaningful factual dispute as to Shume's qualifications: she was required either to pass the required examination or to show that she was qualified for certification by endorsement. She did neither. Therefore, no "additional hearings would have resulted in a more 'accurate' evaluation" of her qualifications to receive a Nurse Aide Certificate. D.C. Reply at 3.

Defendants are correct that, in licensing cases, heightened procedures (such as a predeprivation hearing) are "unlikely to have significant value" where the licensee "does not dispute the factual basis" for the decision. *Dixon v. Love*, 431 U.S. 105, 114 (1977). But Defendants have not cited any case holding that a person can be deprived of an important liberty interest with *no* procedures for challenging the decision, simply because the person will very likely lose that challenge. To the contrary, "[f]air procedures are not confined" to those with meritorious claims. *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 102-03 (D.D.C. 2012) (quoting *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 62 (1993)); *see also Propert v. District of Columbia*, 948 F.2d 1327, 1332 (D.C. Cir. 1991) (noting that "however weighty the governmental interest may be in a given case, the amount of process required can never be reduced to zero"). Shume could conceivably show that a deprivation of due process occurred without proving she was in fact entitled to a renewal; the correct result in that case would be an award of nominal damages, not dismissal. *See Winstead v. District of Columbia*, 720 F. Supp. 2d 44, 50-51 (D.D.C. 2010) (citing *Carey v. Piphus*, 435 U.S. 247, 266 (1978)).

Moreover, at this stage in the proceedings, the Court cannot conclude that the circumstances here posed no plausible risk of an erroneous deprivation of Shume's interest, or that additional procedural safeguards would not have plausibly benefitted her. Shume does not concede that she failed to meet the standards for a Nurse Aide Certificate. *See* Pl.'s Opp'n at 18. And for their part, Defendants' position appears to be that Shume's predicament resulted from their own prior errors—the acceptance of Shume's application by endorsement in 2007 and her subsequent renewals. *See* Pearson Br. at 11. The Court cannot conclude, as a matter of law, that it is implausible that Defendants erred in 2015, when they themselves claim to have erred in 2007, 2009, 2011, and 2013. Moreover, despite Defendants' characterization of this as an open-and-shut case, the record does not present a clear and comprehensive description of the licensure requirements in place in 2007, or an explanation of how these requirements were applied (or misapplied) to Shume's case. Therefore, on the record before it, the Court finds it plausible that a significant risk of error existed. And it is also plausible that additional procedures—even procedures short of a hearing, such as the ability to request an explanation of why the District of Columbia had changed its mind about Shume's qualifications and to submit a written rebuttal—would have meaningfully reduced the risk of error. *Cf. Royer v. Fed. Bureau of Prisons*, 933 F. Supp. 2d 170, 192 (D.D.C. 2013) (explaining that "notice of the factual basis for the government's decision and a 'fair opportunity for rebuttal' are 'among the most important procedural mechanisms for purposes of avoiding erroneous deprivations'" (quoting *Wilkinson v. Austin*, 545 U.S. 209, 226 (2005)).

In declining to dismiss this claim, the Court does not suggest that every nurse aide seeking to renew her certificate must be afforded extensive procedural protections, which might well impose unreasonable costs on the District of Columbia and interfere with its important task

14

of ensuring that health professionals are properly qualified. *Cf. City of Los Angeles v. David*, 538 U.S. 715, 718-19 (2003) (per curiam) (holding that due process did not require expediting over a thousand routine vehicle-impound hearings a city held each year). The Court merely concludes, based on the limited record before it on this motion to dismiss, that Shume's due process claim is plausible in light of the particular facts alleged: Defendants apparently concluded, eight years after the fact, that she had never been qualified for her certificate. At this stage of the proceedings, given the potential for error, the Court therefore finds it plausible that *some* process for challenging that conclusion, which ultimately deprived Shume of an important liberty interest, was required. Because Shume was apparently afforded *no* such process, the motion to dismiss her procedural due process claim will be denied. It should go without saying that the Court renders no pronouncement about how it might appraise Shume's claim on a motion for summary judgment based on a more fulsome record.

### b. Substantive Due Process

Shume also asserts a violation of her substantive due process rights. *See* Pl.'s Opp'n at 19. "[T]he doctrine of substantive due process constrains only egregious government misconduct." *George Wash. Univ. v. District of Columbia*, 318 F.3d 203, 209 (D.C. Cir. 2003). The D.C. Circuit has "described the doctrine as preventing only 'grave unfairness,' and identified two ways in which such unfairness might be shown: 'Only [1] a substantial infringement of state law prompted by personal or group animus, or [2] a deliberate flouting of the law that trammels significant personal or property rights, qualifies for relief under § 1983.'" *Id.* (citation omitted) (alterations in original) (quoting *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988)). Thus, the doctrine should be limited to "extreme cases." *Id.* Moreover, "there is no arbitrary deprivation of [the] right [to pursue a vocation] where its exercise is not permitted because of a failure to comply with conditions imposed by the state for the protection of society." *Robinson*,

15

123 F. Supp. 3d at 42 (quoting *Dent v. West Virginia*, 129 U.S. 114, 121-22 (1889)).

"Regulations on entry into a profession, as a general matter, are constitutional if they have a rational connection with the applicant's fitness or capacity to practice the profession." *Nat'l Ass'n for Advancement of Multijurisdiction Practice v. Howell*, 851 F.3d 12, 20 (D.C. Cir. 2017) (quoting *Lowe v. SEC*, 472 U.S. 181, 228 (1985) (White, J., concurring in the result)) (internal quotation marks omitted), *cert. denied*, 138 S. Ct. 420 (2017).

There can be no serious dispute that the requirements Defendants seek to impose on Shume—to pass an examination or to obtain a license from another jurisdiction whose requirements the District of Columbia recognizes as comparable to its own—are rational. And, as the District of Columbia argues, *see* D.C. Br. at 13, even if Shume is right and Defendants erred in concluding she failed to meet those requirements, agency negligence does not amount to egregious government misconduct. *See Zevallos v. Obama*, 793 F.3d 106, 118 (D.C. Cir. 2015). Therefore, her substantive due process claim will be dismissed.

### C. Equitable Relief, Writ of Mandamus, and Declaratory Judgment (Counts II and III)

Shume's Amended Complaint contains two additional counts, one for equitable relief or a writ of mandamus (Count II) and one for a declaratory judgment (Count III). To the extent that Shume asserts a right to equitable or declaratory relief pursuant to her § 1983 claim, those requests for relief are not separate causes of action. *See Base One Techs., Inc. v. Ali*, 78 F. Supp. 3d 186, 199 (D.D.C. 2015) (injunctive relief); *Malek v. Flagstar Bank*, 70 F. Supp. 3d 23, 28 (D.D.C. 2014) (declaratory judgment). If Shume believes she is entitled to equitable or declaratory relief under federal law, she may request it at the appropriate time. Moreover,

Shume's only substantive claim under District of Columbia law, for breach of contract, has been dismissed and cannot serve as a basis for equitable or declaratory relief.[4]

Shume also argues in her brief that she has properly alleged an "estoppel claim." Pl.'s Opp'n at 19-23. The only basis for that claim in the Amended Complaint is an allegation that Defendants should be estopped from asserting that she failed to qualify as a nurse aide, given that the District of Columbia repeatedly certified her as qualified. *See* Am. Compl. ¶ 38(e). As Defendants point out, "estoppel" in this sense is not an independent basis for relief, but merely an equitable means of holding a party to a prior representation. *See ATC Petrol., Inc. v. Sanders*, 860 F.2d 1104, 1111 (D.C. Cir. 1988). Therefore, any such "claim" must be dismissed insofar as it purports to be an independent cause of action. Moreover, this sort of estoppel is available against the government only where its agents have lied or engaged in other egregious conduct, none of which is alleged. *See Morris Commc'ns, Inc. v. FCC*, 566 F.3d 184, 191 (D.C. Cir. 2009); *see also Rafferty v. D.C. Zoning Comm'n*, 583 A.2d 169, 175 (D.C. 1990) ("Estopping a municipality from enforcing the law must be, at best, the rare exception, not the rule.").

Finally, Shume requests a writ of mandamus ordering Defendants to renew her certificate. Am. Compl. ¶ 35. The requirements for mandamus are demanding: "To show entitlement to mandamus, plaintiffs must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).

---

[4] The Court notes that District of Columbia law recognizes a right to review of an agency decision pursuant to the Superior Court's general equitable powers, in cases where jurisdiction is not vested exclusively in the District of Columbia Court of Appeals. *See Owens v. D.C. Water & Sewer Auth.*, 156 A.3d 715, 721 (D.C. 2017); *District of Columbia v. Sierra Club*, 670 A.2d 354, 357-61 (D.C. 1996). However, neither party has addressed such a claim in its briefing, and so the Court assumes for purposes of this Opinion that Shume does not assert one.

Even where those threshold jurisdictional requirements are met, whether to grant relief remains in the Court's discretion. *Id.* Shume plainly has not met even the first prong of the jurisdictional test. She describes the District of Columbia's "licensure criteria" as, "[a]t best, . . . unclear and murky." Pl.'s Opp'n at 18. Shume therefore cannot establish a "clear and indisputable right to relief" as required to justify an entitlement to mandamus.

### IV. Conclusion and Order

For the reasons set forth above, it is hereby **ORDERED** that each Defendant's Motion to Dismiss (ECF Nos. 12 and 13) is **GRANTED IN PART** and **DENIED IN PART**. Count I for breach of contract is dismissed against both Defendants. Counts II and III, for equitable and declaratory relief and a writ of mandamus, are also dismissed against both Defendants, without prejudice to Shume's ability to request any relief to which she may be entitled at the appropriate time. Count IV, for violation of 42 U.S.C. § 1983, shall proceed against both Defendants, although only to the extent it is grounded in procedural due process.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 29, 2018